UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA       :

       - against -       :   **<u>MEMORANDUM DECISION</u>**

JAIME NELSON GOMEZ,       :   99-cr-1048-2 (DC)

       Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:    DAMIAN WILLIAMS, Esq.
                    United States Attorney for the Southern District of New York
                    By:   Thomas S. Burnett, Esq.
                         Assistant United States Attorney
                    One Saint Andrew's Plaza
                    New York, New York  10007

                    JAIME NELSON GOMEZ
                    Defendant *Pro Se*
                    FCI Ray Brook
                    P.O. Box 900
                    Ray Brook, New York  12977

CHIN, Circuit Judge:

        On February 1, 2002, following a jury trial, defendant Jaime Nelson Gomez was convicted of seven crimes, including conspiracy to commit murder-for-hire, murder-for-hire, and narcotics conspiracy. *See* Dkt. 284 at 2. I sentenced Gomez to life imprisonment and then, following the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), reimposed the same sentence at a second proceeding. *See id.* Gomez now moves, *pro se*, for a sentence reduction, commonly known as compassionate

release, pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  Dkt. 278.

For the reasons set forth below, Gomez's motion is DENIED.

## BACKGROUND

### A.   Gomez's Background and Criminal History

Gomez was born in the Dominican Republic, where his mother raised him after his parents separated when he was eight years old.  Presentence Investigation Report ("PSR") ¶¶ 77-79.  At age fifteen, Gomez moved to New York.  *Id.*  In 1988, he was convicted of manslaughter and criminal possession of a weapon after he accidentally discharged a firearm in his residence, killing his wife.  *Id.* ¶¶ 64-67.  At that trial, Gomez's mother-in-law testified the shooting was an accident.  *Id.*

### B.   The Underlying Offense, Trial, and Sentencing

I sentenced Gomez to life imprisonment for crimes he committed in May 1998 in connection with his participation in a murder-for-hire scheme on behalf of a drug-trafficking organization.  Dkt. 284 at 1.  Gomez and at least two other individuals were hired by a heroin organization based in the Dominican Republic to kill Johan Pena-Perez and Niltion Duran, two members who had allegedly stolen heroin and customers from the organization.  *Id.* at 1-2.  On May 25, Gomez and his co-conspirators, Johnny Martinez and Thomas Marmolejos, lay in wait in a van, expecting Pena-Perez and Duran to emerge from a Bronx building.  *Id.* at 2.  They did not see their victims that day, but

2

the following day, as they waited again, Gomez and the others spotted Pena-Perez and Duran exiting the building and entering a Toyota Camry. *Id.* Gomez and his accomplices pursued the Camry until it stopped at a red light, at which point Gomez stepped out of the van and fired fifteen to twenty shots at the Camry. *Id.* Pena-Perez died in the driver's seat. *Id.* Duran took off running; Gomez chased him into a nearby building, where Gomez fired five shots at Duran, injuring him. *Id.* Police officers arrested Gomez on the building's roof. *Id.*

On November 18, 2001, a grand jury returned a superseding indictment against Gomez and his co-conspirators. *Id.* at 1. Gomez and Marmolejos proceeded to trial, and on February 1, 2002, a jury returned a guilty verdict on all counts pertaining to each of them. *Id.* at 2. The crimes of which Gomez was convicted included murder-for-hire conspiracy and substantive murder-for hire, conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, murder while engaged in a major drug conspiracy, and weapons violations. *Id.* at 1.[1]

---

[1] Marmolejos was convicted of eight crimes: the same seven as Gomez, plus one count of possession of a firearm with an obliterated serial number. *See* Dkt. 285 at 1. On June 7, 2023, Marmolejos filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 280. Upon recently learning that Marmolejos's daughter attended school with one of my sons some years ago, I recused myself from hearing a compassionate release motion recently filed by Marmolejos. Dkt. 286. I express no opinion as to the merits of Marmolejos's motion but note that Gomez's conduct and the circumstances of Gomez's motion are meaningfully different from those of Marmolejos.

At a sentencing proceeding on September 19, 2002, I determined that two of the crimes of which Gomez was convicted, conspiracy to commit murder-for-hire and murder-for hire, were subject to mandatory life sentences. Dkt. 284-1 at 33. Thus, I sentenced Gomez to life imprisonment on those and other counts and to a consecutive term of twenty years' imprisonment for his conviction for conspiracy to commit Hobbs Act robbery and extortion; I also imposed a consecutive sentence of ten years' imprisonment on one of the weapons counts. *Id.* at 34. At sentencing, I noted that "[e]ven assuming there is some discretion . . . I believe that a sentence of life is the appropriate one. A life was taken. This was a murder for hire. This was not a crime of passion." *Id.* at 33.

C.  **Post-Conviction Proceedings**

On direct appeal, the Second Circuit affirmed Gomez's conviction. *United States v. Marmolejas*, 112 F. App'x 779 (2d Cir. 2004) (summary order). Following the Supreme Court's decision in *Booker*, I conducted a resentencing proceeding and reimposed Gomez's sentence without alteration. Dkt. 284-2 at 6. I reiterated that "even if I had discretion, in light of all the circumstances, in light of the crime here, a murder for hire and how it was carried out, I believe that a sentence of life imprisonment is the appropriate sentence in any event." *Id.*

In addition to an unsuccessful petition for certiorari, Gomez has filed three motions for relief pursuant to 28 U.S.C. § 2255, each of which was denied. Dkt. 284 at 3.

D.  **Gomez's Motion for Compassionate Release**

On May 2, 2023, Gomez applied for compassionate release to the Warden at FCI Ray Brook, where he is incarcerated. Dkt. 278 at 27. The Warden denied his application. *Id.* at 28. On May 19, 2023, Gomez filed, *pro se,* his motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 278. He simultaneously moved for appointment of counsel. *Id.* at 2-3. The government opposes Gomez's motion for a sentence reduction. Dkt. 284.

Construed liberally, as required when a motion is filed *pro se, see McLeod v. Jewish Guild for the Blind,* 864 F.3d 154, 156 (2d Cir. 2017), Gomez's motion raises four grounds for relief. Gomez argues that extraordinary and compelling reasons warranting a sentence reduction are (1) his acceptance of responsibility and rehabilitation; (2) the harsh conditions of his incarceration during the COVID-19 pandemic and ongoing dangers to his health from incarceration at FCI Ray Brook; (3) the prison's inability to provide treatment for post-traumatic stress disorder ("PTSD") arising from witnessing his father assault his mother during his childhood; and (4) the harshness of his sentence compared to sentences imposed on other defendants convicted of murder. *See* Dkt. 278. Gomez also argues that the sentencing factors weigh in favor of granting relief. *Id.* at 24.

Gomez is currently 56 years old and has served some twenty-two years of his sentence. Dkt. 284 at 3.

5

## DISCUSSION

A.  Applicable Law

A court "may reduce the [defendant's] term of imprisonment" if, after the defendant has "fully exhausted all administrative rights to appeal," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  The court must also consider whether the factors set forth in 18 U.S.C. § 3553(a) warrant a reduction.  *Id.*  Although U.S. Sentencing Guidelines Manual § 1B1.13 lists some reasons that qualify as extraordinary and compelling, the Second Circuit has held that district courts are not limited to considering only those reasons -- courts are, instead, free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

By statute, rehabilitation "*alone* shall not be considered an extraordinary and compelling reason to grant release." 28 U.S.C. § 994(t) (emphasis added); *see also Brooker*, 976 F.3d 237-238 (concluding that defendant did not rely solely on rehabilitation when he also asserted that "his age at the time of the crime and the sentencing court's statements about the injustice of his lengthy sentence" supported his motion for a sentence reduction).  At least one court has granted compassionate release on the basis of "total rehabilitation," supported by "remarkable" evidence and ancillary factors.  *United*

6

*States v. Rodriguez*, 492 F. Supp. 3d 306, 310-11 (S.D.N.Y. 2020) (concluding that an extensive record of complete rehabilitation, in combination with an increased risk of severe illness from COVID-19 and severe pandemic lockdown conditions, established extraordinary and compelling circumstances).

While many courts concluded there were extraordinary and compelling reasons to grant motions for compassionate release during the initial phase of the COVID-19 pandemic, especially where prisoners suffered from underlying health conditions or severe conditions of confinement, *see, e.g., United States v. Pena*, 459 F. Supp. 3d 544, 511-52 (S.D.N.Y. 2020); *United States v. McCoy*, No. 02 Cr. 1372, 2022 WL 2981445 (S.D.N.Y. July 27, 2022), courts have been less inclined to grant compassionate release after vaccination against COVID-19 became generally available, *see, e.g., United States v. Gomez*, No. 15 Cr. 348, 2022 WL 61317 (S.D.N.Y. Jan. 5, 2022), *aff'd*, 2022 WL 7772745 (2d Cir. Oct. 14, 2022).

If a defendant has presented extraordinary and compelling reasons warranting a sentence reduction, the court must then weigh the factors set forth in section 3553(a) to decide whether to grant the motion. *See United States v. Israel*, No. 05 Cr. 1039, 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019). The statutory factors include the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, promote respect for the

law, provide just punishment, and afford adequate deterrence to criminal conduct; and the need to avoid unwarranted disparities in sentences. *See* 18 U.S.C. § 3553(a).

Finally, district courts in this Circuit have sometimes granted compassionate release to defendants convicted of murder offenses, including those serving life sentences for murder-for-hire. *See, e.g., United States v. Perez*, No. 02 Cr. 7, 2021 WL 837425 (D. Conn. Mar. 4, 2021); *United States v. Russo*, --- F. Supp. 3d ---, 2022 WL 17247005 (E.D.N.Y. Nov. 28, 2022); *Rodriguez*, 492 F. Supp. 3d at 317. The language of the First Step Act does not necessarily "[preclude] granting compassionate release to a defendant who received a statutory mandatory [life] sentence. . . . Nor does the First Step Act forbid granting compassionate release to those sentenced for murder." *Perez*, 2022 WL 837425, at *6 (citations omitted). Courts, however, have granted such relief only after considering the section 3553(a) factors carefully. *See, e.g., Russo*, --- F. Supp. 3d ---, 2022 WL 17247005, at *7-9 (finding that a defendant convicted of murder had "more than satisfied [the § 3553(a)] factors" in light of his "extraordinary rehabilitation").

On a motion for compassionate release, the defendant bears the burden of showing that a sentence reduction is warranted. *See United States v. Patterson*, No. 17 Cr. 118-6, 2020 WL 2571044, at *2 (S.D.N.Y. May 21, 2020).

B.   **Application**

The government does not contest that Gomez has exhausted his administrative remedies. *See* Dkt. 278 at 27-28; Dkt. 284 at 4 n.2; *see also United States v.*

8

*Newkirk*, 18 Cr. 699, 2020 WL 7260739, at \*2 (S.D.N.Y. Dec. 10, 2020) (holding that submitting a request for release to the Warden and receiving a denial was sufficient exhaustion of administrative remedies).

I first consider whether Gomez is eligible for compassionate release under section 3582(c)(1)(A), that is, whether he has demonstrated extraordinary and compelling reasons warranting a sentence reduction. I conclude that he has not. Although Gomez's motion fails at this stage of the analysis, I also consider whether the factors set forth in section 3553(a) support release. I conclude that those factors, too, do not weigh in favor of granting Gomez's motion.

1.   **Extraordinary and Compelling Reasons**

Gomez claims that his remorse for his conduct and his rehabilitation constitute extraordinary and compelling reasons for a sentence reduction. Dkt. 278 at 21-23. Though rehabilitation alone is not sufficient, "total rehabilitation" may warrant release when other factors also justify reducing a prisoner's sentence. *Rodriguez*, 492 F. Supp. 3d at 310-11. Gomez, however, has not demonstrated total rehabilitation. He argues that his low PATTERN Score Risk Assessment, acquisition of pro-social skills, and absence of violent incidents during his incarceration demonstrate that he has been rehabilitated. Dkt. 278 at 21-23. Gomez also points to a list of educational courses that he has taken in prison. *Id.* at 30. Though these accomplishments are certainly commendable, his participation in educational programs has been sporadic, and his

9

conduct, considered as a whole, does not rise to the level of total rehabilitation. *Cf. Rodriguez*, 492 F. Supp. 3d at 310-11 (granting release based on "remarkable" evidence of rehabilitation, including "glowing" letters from 27 members of the prison staff and an "outstanding" record of employment and prison programming).

Next, Gomez argues that the COVID-19 pandemic has made FCI Ray Brook a "dangerous place" and a "potential death trap." Dkt. 278 at 11. In opposition, the government correctly asserts that conditions in the prison are not unsafe. Dkt. 284 at 6. Indeed, according to statistics from the Federal Bureau of Prisons, there are currently no inmates or staff members at FCI Ray Brook who are positive for COVID-19. *See BOP COVID-19 Statistics*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed July 17, 2023). Gomez is also vaccinated. *See* Dkt. 278 at 14. Because the pandemic "has diminished nationwide and within the BOP," courts have recently denied early release on the basis of arguments like Gomez's, even where an inmate suffers from medical conditions rendering him more susceptible to complications from COVID-19. *United States v. Roman*, No. 19 Cr. 116, 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022). Thus, especially because he has not asserted any relevant underlying conditions, Gomez has not demonstrated that his risk from COVID-19 warrants release.

Additionally, Gomez argues that he suffers from PTSD resulting from a childhood incident where he watched his father stab his mother with a pair of scissors

and that the prison cannot provide sufficient treatment for his disorder. *See* Dkt. 278 at 16-18. Nevertheless, Gomez has not provided any evidence that the BOP is unable to provide adequate care, including evidence that he sought or was denied treatment or that he received a diagnosis. *See id.* Moreover, Gomez's PSR, which describes his family circumstances in some detail, does not mention the decades-old childhood incident, indicating only that Gomez's parents separated when he was eight years old. *See* PSR ¶ 79. Here, too, Gomez fails to establish extraordinary and compelling circumstances.

Finally, Gomez argues that his sentence was disproportionately harsh. *See* Dkt. 278 at 20-21. As I emphasized during both of Gomez's sentencing proceedings, however, life imprisonment is an appropriate and justified penalty for his conduct. *See* Dkt. 284-1; Dkt. 284-2 at 6. Congress specifically concluded that murder-for-hire resulting in death should be punished, at minimum, by life imprisonment. *See* 18 U.S.C. § 1958(a).[2] Furthermore, courts in this District have routinely sentenced defendants to life in prison following conviction on murder charges. *See, e.g., United States v. Gracesqui*, 730 F. App'x 25 (2d Cir. 2018) (summary order). Gomez's sentence was not disproportionate, and its length does not constitute an extraordinary and compelling reason for compassionate release.

---

[2] The statute also authorizes the imposition of a sentence of death where death results from a murder-for-hire. *See id.* The government did not seek the death penalty against Gomez.

11

2.   **Section 3553(a) Factors**

Not only has Gomez failed to establish extraordinary and compelling reasons, but the section 3553(a) factors also weigh against granting his motion.

First, "the nature and circumstances" of Gomez's offense weigh against a sentence reduction. 18 U.S.C. § 3553(a)(1). Gomez was involved in a murder-for-hire conspiracy, at the behest of a drug-trafficking organization, in which he personally killed one victim and seriously injured another in return for money. *See* Dkt. 284 at 1-2. As I noted during Gomez's first sentencing hearing, "a life was taken. This was a murder for hire. This was not a crime of passion." Dkt. 284-1 at 33. When I reconsidered the sentence, I again concluded that "life imprisonment is the appropriate sentence in any event." Dkt. 284-2 at 6. Additionally, Gomez's "history and characteristics" weigh against release. 18 U.S.C. § 3553(a)(1). Even before participating in the murder-for-hire scheme, Gomez had been convicted of second-degree manslaughter in connection with his mishandling of a firearm. PSR ¶¶ 64-68. It is beyond dispute that he was well aware of the dangers posed by firearms, and yet he chose to become part of a violent plot in which he fired dozens of gunshots at his victims.

Therefore, I conclude that granting early release would not be just, given the absence of extraordinary and compelling reasons and the seriousness of Gomez's crimes.

## CONCLUSION

For all these reasons, Gomez's motion for a sentence reduction is hereby DENIED. Moreover, Gomez's motion for appointment of counsel is also DENIED because there is no right to counsel on a motion for compassionate release. *See United States v. Fleming*, 5 F.4th 189, 193 (2d Cir. 2021).

SO ORDERED.

Dated:   New York, New York
July 17, 2023

_____
DENNY CHIN
United States Circuit Judge
Sitting by Designation